## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICK REDDINGTON, on behalf of     :
himself and all persons similarly situated     :
**44 Salter Street**     :    **Case No.:**
**Springfield, NJ 07081**     :
    :    **Class Action Complaint**
       **Plaintiffs,**     :
    :    **Jury Trial Demanded**
   **v.**     :
    :
    :
**VOX MEDIA, INC., d/b/a SB NATION,**     :
**1201 Connecticut Avenue NW, 11th Floor**     :
**Washington, DC 20036**     :
    :
       **Defendant.**     :

## INTRODUCTION

1.     Plaintiff Patrick Reddington brings this action against Defendant Vox Media, Inc., ("Defendant" or "Vox"), individually, for violations of the Fair Labor Standards Act ("FLSA").

2.     Plaintiff Patrick Reddington also brings this class action against Defendant on behalf of himself and all other former and current paid content contributors for Vox's sports blogging network and flagship property SB Nation in New Jersey, who Vox classified as independent contractors.  SB Nation operates over 300 team sites dedicated to publishing written articles, videos, and other content on professional and college sports.  Each team site posts daily coverage on games, statistics, player trades, and culture.  The more traffic the team sites attract, the more advertising revenue Vox generates.  Vox pays Plaintiff and similarly situated class members ("Content Contributors") a small monthly stipend to create and edit the written, video, and audio content on these team sites.  Content Contributors' posts are the core of Vox's business.

3.     During the entire class period, Vox uniformly and consistently misclassified Content Contributors – including job titles such as Site Manager, Associate Editor, Managing Editor, Deputy Editor, and Contributor – as independent contractors in order to avoid its duties and obligations owed to employees under New Jersey law and to gain an unfair competitive advantage over its competitors that properly classify its workers as employees.  Vox controls and directs the performance of Content Contributors in writing and editing content for its blogs, both under contracts it enters with some Content Contributors (but not all) and in fact.  Content Contributors create the written, video, and audio content that makes up SB Nation's team site network and generates advertising revenue.  Their work is central to SB Nation's business. Content Contributors do not create and edit content for their own independent businesses, but create content solely for SB Nation team sites.

## NATURE OF THE ACTION

4.     This is an individual action brought under the FLSA and putative class action brought by an employee of Defendant seeking unpaid minimum wages and overtime wages, pursuant to the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq. ("NJWHL").

## JURISDICTION AND VENUE

5.     Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.     Any claims arising under state law are properly before this Court pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391.  Defendant is headquartered in this District.  The events giving rise to Plaintiff's claims occurred within this District, and Defendant conduct business in this District.

## PARTIES

8.      Plaintiff Patrick Reddington is an adult individual who has been employed by Defendant since 2007 for his work as a Site Manager for SB Nation's team site dedicated to the Washington Nationals called "Federal Baseball."  However, Defendant classified Plaintiff as an independent contractor.  During that time, Plaintiff resided and worked in Springfield, Union County, New Jersey.

9.      Defendant Vox Media, Inc. is a Delaware corporation based in Washington, D.C. and doing business in this District, New Jersey and nationwide.  Vox operates and maintains media websites, including over 300 sports blogs under its flagship property SB Nation.

10.      Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

11.      Defendant's annual gross volume of business exceeds $500,000.

12.      Defendant was at all relevant times an "employer" of Plaintiff and the putative class, within the meaning of the NJHWL.

## FACTUAL ALLEGATIONS

13.      Defendant is a media corporation made up of several brands including SB Nation, Polygon, Eater, Racked, Curbed, ReCode, The Verge, and Vox.  SB Nation, Vox's sports blogging network, owns, operates, and maintains over 300 team sites, each dedicated to a professional sports team, professional sports region, or college known for its amateur sports. There are team sites dedicated to numerous professional and amateur sports nationwide.

**A.      Defendant Uniformly Misclassifies Content Contributors as Independent Contractors**

14.     To generate advertisement revenue from team sites, Defendant requires a steady stream of written, video, and audio content on its team sites from Content Contributors to attract. Defendant hires a Site Manager for each team site to manage, edit, and create content, who in turn is responsible for finding other contributors to create additional blog posts.  Some of these contributors are given a monthly stipend, while other contributors are unpaid.  Vox posts open contributor positions on its website, but does not always indicate whether or not the position is paid.[1]

15.     Defendant views its Content Contributors as independent contractors.  Defendant requires some Content Contributors to sign a "Blogger Agreement," which states that Content Contributor's relationship with Defendant is as an independent contractor.  Defendant does not withhold payroll taxes from its monthly payments to Content Contributors.

16.     Though Defendant classifies Content Contributors as independent contractors, Defendant exercises substantial control over the manner and means by which Content Contributors accomplish their work.

17.     Content Contributors are required to create and/or edit certain numbers of posts per week.  The Blogger Agreements some Content Contributors were required to sign often memorialized Defendant's expectation for the number of blog posts per week the Content Contributor was expected to create and/or edit.

18.     Defendant gives Content Contributors instructions about how to conform posts to increase site traffic from online search engines, known as "search engine optimization."  Content Contributors are told how to craft headlines and tag posts to attract the most viewers to each post.

---

[1] *See* Careers, Vox Media, *available at*: https://www.voxmedia.com/pages/careers-jobs (last accessed September 18, 2018).  The job description for "Site Manager" indicates that it is paid with a monthly stipend, while the job description for "Contributor" is silent about compensation.

They are also instructed on how long certain types of posts should be (such as pre-game previews, instant recaps, and in-depth game analysis), and what key information should be included in each type of post.

19.     The blog posts created by Content Contributors are core to Defendant's business. The more Content Contributors post, the more traffic to each team site, and the more revenue Defendant can generate from advertisers.  Defendant pressures Content Contributors to maintain a constant flow of posted content on these team sites to attract advertisers, but Content Contributors do not see the benefits of advertising revenue.  Content Contributors take no part in negotiating advertisements on team sites; all the negotiations for advertisements are handled directly by Defendant.  Content Contributors have no stake in Defendant's profits or losses.

20.     While Content Contributors were not always under direct supervision by Defendant, neither were they independent journalists who sold their stories to the highest bidder—Content Contributors created and edited content for the purpose of posting it on Defendant's team sites.

21.     Defendant does not hire Content Contributors for their unique set of skills. Defendant does not require, for example, a college degree or prior experience in journalism. Defendant's job posting for a contributor position on a professional basketball team site lists an applicant's minimum qualifications as including that the applicant is "a huge fan of basketball," has "strong opinions on [the] team" and takes "genuine pride in [their] writing."  Applicants must also "be able to write complete sentences."

22.     Defendant requires Content Contributors to have access to the internet on their personal computers and smart phones, but Content Contributors' work does not require any

special tools or equipment.  Defendant provides content contributors with access to internal communication and editing software.

23.     Vox had the authority to hire and fire Plaintiff Reddington.

24.     Plaintiff Reddington possessed no opportunity for profit or loss.  Rather, he was paid a flat $600 per month, regardless of Vox's profitability, how many hours he worked each week, or how many articles he produced.

25.     Plaintiff Reddington did not share in Vox's advertising revenue.  Vox did not permit Plaintiff to advertise his own personal brand or content on the SB Nation website.

26.     Plaintiff Reddington was not required to invest in equipment or materials with respect to his employment at Vox.  Plaintiff merely used his existing personal computer and smart phone to perform services for Vox.

27.     Plaintiff Reddington's services required no special skill.  For example, no specific academic qualifications were required to be a Site Manager, much less a college degree.

28.     Plaintiff Reddington's employment with Vox was in the nature of a permanent relationship.  Plaintiff has been employed by Vox since 2007.

29.     The services performed by Plaintiff Reddignton as a Site Manager for Vox, including writing sports articles, is integral to Vox's business.  Indeed, the content created by its writer constitutes the entirety of the product offered by SB Nation.  Without the existence of the content published on Plaintiff's SB Nation team site, advertisers would not pay Vox to advertise on the site.

30.     As a matter of economic reality, Plaintiff Reddignton was dependent on Vox for income, and therefore was an employee of Vox.  Given the number of hours Plaintiff worked for Vox, the possibility and extent of outside employment was heavily curtailed.

**B.**   **Defendant Pays Content Contributors a Small Monthly Stipend  Insufficient to Meet the Legal Federal or New Jersey Minimum Wage.**

31.    Defendant pays Content Contributors a flat monthly stipend.  Defendant does not increase the stipend as Content Contributors work more hours, such as when their teams make it to the playoffs.

32.    Plaintiff, for example, worked an average of approximately sixty-three hours a week during the MLB regular season for the past two years, and was paid, at most, a stipend of only $600 per month—an average of approximately $2.38 per hour.  Even during the off-season, Plaintiff still worked approximately 31 hours a week, which amounted to an hourly wage of only approximately $4.84.  Given the number of hours Content Contributors work for Defendant every month, this monthly stipend is frequently, if not always, under the minimum wage required by New Jersey law.

33.    According to recent reporting from Deadspin, some Content Contributors have agreements to write a minimum of two posts per week for a $25 per month stipend, which totals about $3.13 per blog, or even less under an hourly rate.[2]

**C.**   **Defendant Does Not Pay Content Contributors Overtime Wages**

34.    Content Contributors are sometimes assigned duties that require them to work over forty hours per week.

35.    Plaintiff, for example, worked on average approximately 63 hours per week during the baseball season.

36.    Defendant does not pay any Content Contributor overtime wages for the time they work beyond eight hours per day or forty hours per week.

---

[2] *See* Laura Wagner, *SB Nation Is Paying Workers As Little As $3 Per Blog Post*, Deadspin (July 31, 2018), https://deadspin.com/sb-nation-is-paying-workers-as-little-as-3-per-blog-po-1827998745 (last accessed Sept. 28, 2018).

**D.   Defendant Does Not Reimburse Content Contributors for Reasonable Business Expenses**

37.     Defendant requires Content Contributors to use their own computers, smart phones, and internet access to create and edit content, as well as to communicate with editors, Site Managers, or SB Nation supervising employees.  Defendant does not reimburse Content Contributors for their personal computers, smart phones, or internet access expenses.

38.     Content Contributors are required to watch sports live or on television so that they may write or create video content about games or matches.  Defendant does not reimburse Content Contributors for the costs of attending, watching, or traveling to these sporting events.

## CLASS ACTON ALLEGATIONS

39.     Plaintiff seeks to represent the following class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class of persons:

> All Content Contributors who created and/or edited written, video, or audio content for an SB Nation team site in New Jersey at any time on or after six years prior to the filing of this action, were classified as independent contractors, and were paid compensation directly from Vox.

40.     The putative class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of Defendant, upon information and belief, Defendant has employed over thirty-five Content Contributors in New Jersey during the Class Period.

41.     Among the proposed class, common questions of law and fact exist as to all Class Members and predominate over any questions that affect only individual Class Members.  Those common questions include, but are not limited to:

a.   Whether Defendant misclassified Class Members as independent contractors for

purposes of the NJWHL as defined by the Supreme Court of New Jersey in

*Hargrove v. Sleepy's, LLC*, 220 N.J. 289 (2015);

   b.   Whether Defendant paid Class Members at least the minimum wage;

   c.   Whether Defendant paid Class Members an overtime premium for all overtime

        hours worked;

   d.   Whether Defendant is required to reimburse Class Members for a portion of their

        home internet, personal computer, and personal smart phone expenses.

42.   Plaintiff's claims are typical of those belonging to members of the Class in that:

(1) Plaintiff is a member of the Class; (2) Plaintiff's claims arise from the same practice or

course of conduct that forms the basis of the Class claims; (3) Plaintiff's claims are based upon

the same legal and remedial theories as those of the Class and involve similar factual

circumstances; (4) there is no antagonism between the interests of Plaintiff and absent Class

Members; and (5) the injuries that Plaintiff suffered are similar to the injuries that Class

Members suffered.

43.   Plaintiff will fairly and adequately represent the Class.  There is no conflict

between Plaintiff's claims and those of other Class Members.  Plaintiff has retained counsel who

are skilled and experienced in class actions and who will vigorously prosecute this litigation.

44.   The Class is readily ascertainable from Defendant's own records.

45.   A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because joinder of all members is impracticable.  Furthermore,

the damages suffered by individual Class Members may be relatively small and the expense and

burden make it impracticable for Class Members to individually seek redress.

46.   Plaintiff knows of no difficulty that might be encountered in the management of

this litigation that would preclude its maintenance as a class action

**COUNT I**
**Minimum Wage Violation, 29 U.S.C. § 206(a)**

47.     All previous paragraphs are incorporated as though fully set forth herein.

48.     The FLSA requires that covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1).

49.     Vox is subject to the wage requirements of the FLSA because Vox is an "employer" under 29 U.S.C. § 203(d).

50.     At all relevant times, Vox is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

51.     During all relevant times, Plaintiff Reddington was a covered employee entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

52.     Plaintiff Reddington is not exempt form the requirement of the FLSA.  Plainitff is entitled to be paid for all hours worked at a rate of not less than $7.25 per hour, pursuant to 29 U.S.C. § 206(a)(1).

53.     Vox's compensation scheme applicable to Plaintiff failed to comply with 29 U.S.C. § 206(a)(1).

54.     Vox knowingly failed to compensate Plaintiff Reddington for all hours worked at a rate of not less than $7.25 per hours, in violation of 29 U.S.C. § 206(a)(1).

55.     Vox also failed to make, keep, and preserve records with respect to Plaintiff Reddington to determine his wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

56.     In violation of the FLSA, Vox acted willfully and with reckless disregard of clearly applicable FLSA provisions.

57.     Pursuant to 29 U.S.C. § 216(b), employers such as Vox, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages

**COUNT II**
**Overtime Violation, 29 U.S.C. § 207(a)**

58.     All previous paragraphs are incorporated as though fully set forth herein.

59.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed, not to fall below 1 ½ times the minimum wage. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).

60.     Vox is subject to the wage requirements of the FLSA because Vox is an "employer" under 29 U.S.C. § 203(d).

61.     At all relevant times, Vox is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

62.     During all relevant times, Plaintiff Reddington was a covered employee entitled to the above-described FLSA protections. 29 U.S.C. § 203(e).

63.     Plaintiff is not exempt from the requirements of the FLSA.  Plaintiff is entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek not to fall below 1 ½ times the minimum wage.  29 U.S.C. §§ 206(a)(1), 207(a)(1).

64.     Vox's compensation scheme applicable to Plaintiff Reddington failed to comploye with 29 U.S.C. §§ 206(a)(1), 207(a)(1).

65.     Vox knowingly failed to compensate Plaintiff Reddington at a rate of one and one half (1 ½) time their regular hourly wage for hours worked in excess of forty (40) hours per week, not to fall below 1 ½ time the minimum wage, in violation of 29 U.S.C. §§ 206(a)(1), 207(a)(1).

66.     Vox also failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine his wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

67.     In violating the FLSA, Vox acted willfully and with reckless disregard of clearly applicable FLSA provisions.

68.     Pursuant to 29 U.S.C. §216(b), employers such as Vox, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering unpaid wages.

## COUNT III
## NJWHL Minimum Wage Violation

69.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

70.     The NJHWL, N.J. Stat. Ann. § 34:11-56a4(a), entitles employees to an amount equal to or greater than the minimum wage for all hours worked.

71.     Defendant paid Plaintiff and Class Members a fixed monthly stipend independent of the number of hours they worked each month.  Given the number of hours Plaintiff and Class Members worked each month, Defendant's monthly stipend was insufficient to meet the legal minimum wage.

72.     As a result of Defendant's failure to Plaintiff and Class Members the legal minimum wage, Plaintiff and Class Members are entitled to recover the unpaid balance of the full amount of the minimum wage for all hours worked, plus interest, liquidated damages, attorney's fees and costs, as well as further relief as described below.

## COUNT IV
## NJWHL Overtime Pay Violation

73.     Plaintiff, on behalf of himself and all Class Members, re-alleges and incorporates

by reference the allegations contained in the paragraphs above as if fully set forth here.

74.     The NJHWL, N.J. Stat. Ann. § 34:11-56a4(b), entitles employees to overtime

premiums for hours worked in excess of forty (40) hours in a given workweek.  All hours must

be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a

minimum wage obligation.

75.     While misclassified as independent contractors, Plaintiff and Class Members

worked in excess of forty hours per week, and Defendant unlawfully failed to pay Plaintiff and

Class Members the proper overtime compensation.

76.     As a result of these violations, Defendant is liable for unpaid overtime wages,

interest, liquidated damages, and attorneys' fees and costs, as well as further relief as described

below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief

against Defendant as follows:

A.     Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23,

and appoint Plaintiff as Class Representative and his attorneys as Class Counsel;

B.     Direct class notice to all Class Members;

C.     Declare that Defendant misclassified all Class Members as independent

contractors;

D.     Award minimum wages, overtime wages, deductions and expenses, plus liquidated

damages to Plaintiff and Class Members;

E.      Award pre-judgment and post-judgment interest at the highest rates allowed by law;

F.      Enjoin Defendant from violating New Jersey law;

G.      Award costs and expenses of this action;

H.      Award reasonable attorneys' fees; and

I.      Award such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on claims so triable.

Date: July 1, 2020                        Respectfully submitted,

/s/ James E. Goodley, Esq.
James E. Goodley (Bar No. PA0069)
jgoodley@jslex.com
Marc L. Gelman (PA 78857)*
mgelman@jslex.com
Ryan P. McCarthy (PA 323125)*
rmccarthy@jslex.com
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 351-0613

David Borgen (CA 099354)*
dborgen@gbdhlegal.com
Laura L. Ho (CA 173179)*
lho@gbdhlegal.com
Ginger Grimes (CA 307168)*
Ggrimes@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

*pro hac vice application to be filed*

*Attorneys for Plaintiff and the Putative Class*