## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL C. BRADLEY, *et al.*, for themselves and on behalf of all persons similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>VOX MEDIA, INC., d/b/a SB NATION, )<br><br>Defendant. ) | Case No. 1:17-cv-01791 (CRC) |
| TAMRYN SPRUILL, *et al*., for themselves and on behalf of all persons similarly situated )<br><br>Plaintiff, )<br><br>v. )<br><br>VOX MEDIA, INC., d/b/a SB NATION, )<br><br>Defendant. ) | Case No. 1:19-cv-00160 (CRC) |
| PATRICK REDDINGTON for himself and on behalf of all persons similarly situated )<br><br>Plaintiff, )<br><br>v. )<br><br>VOX MEDIA, INC., d/b/a SB NATION, )<br><br>Defendant. ) | Case No. 1:20-cv-1793 (CRC) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OMNIBUS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated:   August 17, 2020

James E. Goodley (Bar No. PA0069)
jgoodley@jslex.com
Marc L. Gelman (PA 78857)*
mgelman@jslex.com
Ryan P. McCarthy (PA 323125)*
rmccarthy@jslex.com
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 351-0613

David Borgen (CA 099354)*
dborgen@gbdhlegal.com
Laura L. Ho (CA 173179)*
lho@gbdhlegal.com
Ginger Grimes (CA 307168)*
Ggrimes@gbdhlegal.com
Mengfei Sun (CA 328829)*
Msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN &
HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

*Admitted pro hac vice*

*Attorneys for Plaintiffs and the Classes*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

   **A.**   **Plaintiffs' Claims** ................................................................................................. 2

   **B.**   **Plaintiffs' and the Settlement Class' Claimed Damages** ................................. 3

   **C.**   **Defenses and Litigation Risks** ........................................................................... 5

**II.**   **PROCEDURAL HISTORY AND MEDIATION** .................................................... 7

   **A.**   **Litigation History** ............................................................................................... 7

   **B.**   **Mediation** ............................................................................................................ 9

**III.** **TERMS OF THE SETTLEMENT** ....................................................................... 10

**IV**  **ARGUMENT** ........................................................................................................ 11

   **A.**   **Legal Standard for Approval of Settlements Under Rule 23(e)** ................... 11

   **B.**   **This Case Warrants Preliminary Approval** ................................................... 12

         *1.*   *The Court Will Likely Be Able to Approve the Settlement Terms* ........................... 12

         *a. Plaintiffs and Class Counsel Have Adequately Represented the Class* .................... 12

         *b. The Settlement Was Negotiated at Arms-Length* ........................................................ 13

         *c. The Relief Provided in the Class Settlement is Adequate, Taking* ............................ 14

         *Into Account the Costs, Risks and Delay of Trial and Appeal* ....................................... 14

         *d. The Relief Provided in the Class Settlement is Adequate, Taking* ........................... 15

         *Into Account the Effectiveness of Distributing Relief to the Class* ................................ 15

         *e. The Relief Provided in the Class Settlement is Adequate, Taking* ............................ 15

         *Into Account the Proposed Attorney's Fees* .................................................................... 15

         *f. All Agreements Have Been Disclosed* ........................................................................... 16

         *g. The Proposal Treats Class Members Equitably Relative to Each Other* ................. 16

         *h. The Service Awards Should be Approved* ................................................................... 18

         *2.*   *The Court Will Be Able to Certify the California and New Jersey Settlement*
            *Classes for Purposes of Settlement Only* ................................................................... 19

         *a. Numerosity* ....................................................................................................................... 20

         *b. Commonality* .................................................................................................................... 21

         *c. Typicality* .......................................................................................................................... 22

         *d. Adequacy* .......................................................................................................................... 22

         *e. Predominance* ................................................................................................................... 23

*f. Superiority* ................................................................................................................ 25

    *3.  The Proposed Notice is Appropriate* ........................................................ 27

**C.  Settlement for the FLSA Settlement Class Should Also Be Approved** ...................... 28

**D.  Proposed Final Approval Schedule** ............................................................ 30

**CONCLUSION** ..................................................................................................... 31

## INTRODUCTION

Named Plaintiffs in the three related cases, *Bradley et al. v. Vox Media, Inc.*, No. 17-1791 (Plaintiffs Cheryl C. Bradley, John M. Wakefield and Maija Liisa Varda of the "*Bradley* Action"), *Spruill et al. v. Vox Media, Inc.*, No. 19-160 (Plaintiffs Tamryn Spruill and Jacob Sundstrom of the "*Spruill* Action") and *Reddington v. Vox Media, Inc.*, No. 20-1793 (Plaintiff Patrick Reddington of the "*Reddington* Action"), and Defendant Vox Media, Inc. ("Defendant or "Vox Media") have agreed to settle these three cases on a global class-wide basis and seek approval of the settlement under Fed. R. Civ. P. 23(e) and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). This non-reversionary settlement obligates Defendant to pay $4,000,000.00, to be paid 50% at preliminary approval and 50% at final approval, plus Defendant's portion of employer payroll taxes.

Plaintiffs now seek approval of the class and collective action settlement on behalf of the following three settlement classes:

> All individuals who filed valid notices of consent to join the *Bradley* Action ("Opt-In Plaintiffs")—except for those individuals who later withdrew from this Action (the "FLSA Settlement Class")

> All current and former paid contributors to Vox Media, who were classified as independent contractors and performed work in California for any SB Nation team site from September 21, 2014 through the date of preliminary approval of the settlement by the Court or August 5, 2020, whichever is earlier (the "California Settlement Class");

> All current and former paid contributors to Vox Media, who were classified as independent contractors and performed work in New Jersey for any SB Nation team site from March 31, 2014 through the date of preliminary approval of the settlement by the Court or August 5, 2020, whichever is earlier (the "New Jersey Settlement Class" and collectively with the California Settlement Class, "Rule 23 Settlement Classes").

I.       **CLAIMS AND DEFENSES**

A.       **Plaintiffs' Claims**

This litigation comprises a group of class and collective actions involving sports bloggers who contributed to Defendant Vox Media's SB Nation team sites.  Plaintiffs in each of the cases allege that they were misclassified as independent contractors and denied minimum wages, overtime pay and other protections under California, New Jersey, and federal law.

Plaintiff Bradley filed her initial federal collective action complaint on September 1, 2017 in this Court.  The operative complaint, the First Amended Collective Action Complaint, alleges that Defendant misclassified Site Managers as independent contractors and that Defendant therefore failed to pay minimum wages and overtime wages for all hours the Site Managers worked as required under the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. § 201, *et seq.*  Plaintiffs John M. Wakefield and Maija Liisa Varda are also named Plaintiffs in this lawsuit.

Plaintiff Spruill first filed her California claims in California state court on September 21, 2018.  Defendant removed the case to federal court and Plaintiffs agreed to relate it to the existing *Bradley* case.  The operative Third Amended Complaint in *Spruill* alleges that Defendant misclassified Site Managers and other paid contributors as independent contractors and failed to: (1) pay minimum wages under the California Labor Code and the applicable Wage Order from the California Industrial Welfare Commission; (2) pay overtime wages under the California Labor Code and applicable Wage Order; (3) provide meal periods in violation of the California Labor Code and applicable Wage Order; (4) provide rest periods in violation of the California Labor Code and applicable Wage Order; (5) provide accurate itemized wage statements in violation of the California Labor Code and applicable Wage Order; (6) reimburse all business expenses in violation of the California Labor Code; and (7) pay all wages owed upon

2

separation from the company in violation of the California Labor Code.  Based on these

violations, Plaintiffs also allege that Defendant violated the California Unfair Competition Law,

Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Plaintiff Jacob Sundstrom is also a named Plaintiff in

this lawsuit.

Plaintiff Spruill also alleges that she was an aggrieved employee under the California

Private Attorneys' General Act ("PAGA"), Cal. Lab. Code §§ 2699 *et seq.* and sought civil

penalties for Defendant's failure to pay the applicable minimum wage, failure to pay overtime

wages, failure to provide accurate wage statements, failure to provide meal and rest periods,

failure to indemnify contributors for all business expenses, failure to pay all wages to an

employee who is discharged or quits, failure to pay all wages owed twice per month, failure to

keep accurate payroll records, and willful misclassification of contributors as independent

contractors.

Plaintiff Reddington filed the New Jersey state claims in this Court on July 1, 2020.  The

complaint in *Reddington* alleges that Defendant misclassified Site Managers and other paid

contributors as independent contractors and therefore failed to pay contributors the applicable

minimum wage and overtime wages in violation of the New Jersey Wage and Hour Law,

N.JS.A. 34:11-56a *et seq.*  Plaintiff Reddington also alleged that Defendant violated his

individual rights to minimum and overtime wages under the FLSA.   Plaintiff Reddington and

Defendant Vox Media had previously agreed to tolling of this matter beginning on August 28,

2019.

**B.      Plaintiffs' and the Settlement Class' Claimed Damages**

Plaintiffs estimate that Defendant's total exposure over these three cases was significant.

Plaintiffs estimate that the unliquidated damages for Defendant's FLSA violations for the approximately one hundred opt-in Plaintiffs would have totaled around $806,407 under a two-year statute of limitations, or $1,060,554 if Plaintiffs could prove that Defendant willfully violated the FLSA—meaning a three-year statute of limitations would apply. *See* **Ex. A ("Goodley Decl.") at ¶ 14**. Plaintiffs' estimate is based on the assumption that each Site Manager worked an estimated 20 hours per week and received a flat, monthly stipend for all of their hours worked. *See* **Goodley Decl. at ¶ 12**.

Plaintiffs' California claims cover approximately 345 class members. *See* **Ex. B ("Borgen Decl.") at ¶ 5**. Plaintiffs estimate Defendant's total exposure for Plaintiffs' California claims using the assumption that Site Managers worked approximately 20 hours per week, averaged one hour of overtime per week, missed one meal and rest period every two weeks, and spent about $50 per month in business expenses. *See* **Borgen Decl. at ¶ 5**. Plaintiffs assumed that contributors worked fewer hours per week – approximately ten hours. *See Id.* Plaintiffs estimate that Defendant's total exposure on their California Labor Code and Wage Order claims, using the extended statute of limitations available under the Unfair Competition Law, was approximately $6,016,722. *See Id.*

Plaintiffs estimate that Defendant's total exposure on Plaintiff Spruill's representative PAGA claim for approximately 266 aggrieved employees, based on the same assumptions used in calculating the Labor Code and Wage Order claims, was approximately $6,584,450. *See* **Borgen Decl. at ¶ 6**. Under PAGA, 75% of all civil penalties assessed are given to the state Labor and Workforce Development Agency, and the remaining 25% of the penalties are paid to aggrieved employees. *See* Cal. Lab. Code § 2699(i).

787017.3

Plaintiffs' New Jersey claims cover approximately 118 class members.  *See* **Goodley Decl. at ¶ 15**.  Plaintiffs estimate Defendant's total exposure for Plaintiffs' New Jersey claims using the assumption that Site Managers worked approximately 20 hours per week and contributors approximately 10 hours per week.  *See* **Goodley Decl. at ¶ 12**.  Plaintiffs estimate that Defendant's total unliquidated damage exposure on their New Jersey claims, was approximately $910,132.37.  *See* **Goodley Decl. at ¶ 15**.

In total, Plaintiffs estimate that Defendants' total exposure would be, on the high end, approximately $14,317,711, or, more realistically, taking into consideration the litigation risks, Defendant's defenses, and room for the courts' discretion to decrease civil penalties under PAGA, approximately $7,733,261.  **Goodley Decl. at ¶¶ 14-15; Borgen Decl. at ¶¶ 5-7**.  The total settlement of $4,000,000 represents about 28% of the maximum exposure and about 52% of the realistic damages for the three cases.[1]

## C.    Defenses and Litigation Risks

Plaintiffs note that as strong as they believe their case to be, there are always litigation risks in any case.  Settlement offers the benefit of certain and immediate payment to class members without any of the uncertainty attendant in continued litigation.  This is a particularly salient consideration in light of the economic uncertainty wrought by COVID-19.  **Goodley Decl. at ¶ 22; Borgen Decl. at ¶ 11**.  Additionally, there are always risks that the Court might not certify the classes under the FLSA or Fed. R. Civ. P. 23.

---

[1]     Defendant disagrees with Plaintiffs' exposure and damages calculations, both of which Defendant maintains are significantly lower than Plaintiffs have asserted.

5

Defendant has drafted the following statement summarizing its defenses to Plaintiffs' claims:[2]

Defendant has strong defenses to all three of these lawsuits. ***First***, substantial evidence in the record, including depositions, declarations and documents produced in discovery, demonstrates that Plaintiffs and collective and class members satisfy all of the relevant criteria for classification as independent contractors—meaning that all of Plaintiffs' claims must fail. For example, testimony from the named Plaintiffs confirms that Vox Media lacked control over the manner and means by which Plaintiffs performed work. Plaintiffs performed work when and where they chose, had unfettered editorial control over the content they produced, and had minimal, if any, contact with Vox Media employees. In addition, many of the named Plaintiffs and Opt-In Plaintiffs viewed themselves as professional writers, who wrote for multiple outlets, often on a freelance basis. A professional freelancer is the very definition of an independent contractor. Still others had full-time jobs as accountants, teachers and lawyers, and viewed their contributions to SB Nation team sites as nothing more than a side hobby that took a backseat to their "real" jobs. ***Second***, even if Plaintiffs could demonstrate that some or all of these individuals were improperly classified as independent contractors (a dubious proposition at best), the evidence does not support Plaintiffs' estimated damages calculations—which are simply too high. The evidence consistently showed that the amount of time it took Site Managers and contributors to perform the work required in their contracts was *far* lower than the hours estimates provided by Plaintiffs and Opt-In Plaintiffs. For instance, one Site Manager testified that he considered the time he spent while he was playing with his child, but within

---

[2] Of course, Plaintiffs do not believe these defenses have merit, but merely recognizes that there are always risks a fact finder or the Court might ultimately disagree with Plaintiffs.

6

earshot of his phone, as compensable time because his phone could potentially buzz at any moment with a news alert about a sports team.  ***Third***, Plaintiffs overestimate the realistic damages for these cases because their estimates are predicated upon being able to prove that Defendant willfully violated the FLSA, which would extend the statute of limitations from two to three years. Defendant does not believe that Plaintiffs have mustered any, let alone sufficient, evidence to prove establish willfulness.  ***Fourth***, although Defendant does not oppose class and collective certification for settlement purposes only because such certification does not present manageability problems for trial, Defendant would have had strong grounds to oppose class certification for trial in *Spruill* and *Reddington*, and to seek decertification of the conditionally certified FLSA collective in *Bradley*, including lack of predominance and manageability.  In spite of the strength of its defenses, litigation is costly and an ever-present distraction from the core mission of the business.  Moreover, regardless of the strength of any defense, litigation always carries some inherent risk.  Ultimately, Defendant weighed the costs of continued litigation and made a business decision that this settlement amount was reasonable and would enable the company to put these cases behind it and move on.

## II.      PROCEDURAL HISTORY AND MEDIATION

### A.      Litigation History

These cases have been extensively litigated.  The *Bradley* Action (an FLSA collective action brought under 29 U.S.C. § 216(b) on behalf of Site Managers) was filed almost three years ago.  The *Bradley* Plaintiffs overcame a partial motion to dismiss, ECF No. 30, and achieved conditional certification of the *Bradley* Collective, ECF No. 37.

The *Spruill* Action (a Rule 23 class action brought under the California Labor Code) was originally filed in California Superior Court on September 21, 2018, ECF No. 1.  Vox Media

removed the case to the Northern District of California under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  *Id.*  In response, *Spruill* moved to remand the action to state court, arguing that Vox Media failed to meet its burden in demonstrating that $5 Million was in controversy, as required by CAFA.  ECF No. 23.  Vox Media responded in opposition to the motion to remand by proffering additional evidence of the number of putative class members, their job classifications, hours worked, rates of pay and amounts in controversy.  ECF No. 26. Based on the evidence produced by Vox Media, the Parties entered into a stipulation on January 23, 2019 to rescind Plaintiffs' motion for remand and transfer the *Spruill* Action to this Court. ECF No. 27.

On March 22, 2019 (shortly after Bradley's Motion for Conditional Certification was granted), the *Bradley* Plaintiffs filed an unopposed Motion to Relate their case with the *Spruill* Action, which the Court granted.  *Bradley* ECF Nos. 39, 40.  The Court held an in-person Initial Rule 16 Conference concerning the *Bradley* and *Spruill* Actions.  *Bradley* ECF No. 63.  After the *Bradley* opt-in period closed with approximately 100 Site Managers joining the case, the Parties reached a detailed Stipulation and Order Regarding Opt-In Discovery, in which 20 Opt-In Plaintiffs would be subject to written discovery, 10 of whom would be deposed.  *Bradley* ECF No. 82.

For almost a year, the Parties engaged in extensive coordinated discovery in *Bradley* and *Spruill*.  The Parties exchanged over 70,000 documents.  **Goodley Decl. at ¶ 3**.  Each Named Plaintiff and each of the sample 20 Opt-In Plaintiffs provided answers to Vox Media's interrogatories and produced documents.  **Goodley Decl. at ¶ 9**.  From October 2019 through March 2020, the Parties took 20 depositions, comprising: three Vox Media executives (CEO James Bankoff, Chief Legal Officer Lauren Fisher, COO Trei Brundrett), one of the founders,

Tyler Bleszinski, six Vox Media League Managers who supervised Vox Media's Site Managers, five Named Plaintiffs and five Opt-In Plaintiffs.[3]  **Goodley Decl. at ¶¶ 4-7**.  Vox Media had intended to take depositions of Named Plaintiff Maija Varda, Opt-In Plaintiff Charles Harper,[4] and three additional opt-ins to be chosen by Vox Media, but in view of the COVID-19 pandemic, was unable to do so prior to the mediation.  **Goodley Decl. at ¶ 6**.

In August 2019, Class Counsel and Vox Media entered into a tolling stipulation concerning Patrick Reddington and a New Jersey's Class' claims under New Jersey law, similar to those in the *Spruill* Action.  **Goodley Decl. at ¶ 10**.  The Parties had agreed that Class Counsel would not file the *Reddington* Action at that time.  *Id*.  Patrick Reddington was deposed by Vox Media as an Opt-In Plaintiff in *Bradley*.  **Goodley Decl. at ¶ 7**.  The *Reddington* Class' claims were part of the negotiations during mediation.  **Goodley Decl. at ¶ 10**.  After the Parties reached a preliminary agreement in mediation, the *Reddington* Action was filed in this Court on July 1, 2020, so that preliminary approval could be sought to include the settlement of claims in the *Reddington* Action as well.  *Id*.

### B.   Mediation

A remote mediation was held on June 2, 2020 before an experienced mediator with JAMS, Linda Singer.  **Goodley Decl. at ¶ 16**.  After the 10-hour session on June 2, the Parties appeared to be at an impasse, but after follow-up discussions over the next week directed through Ms. Singer, the Parties eventually reached agreement on a $4 million global settlement of all

---

[3] Named Plaintiff Patrick Reddington was deposed in his capacity as an Opt-In Plaintiff in *Bradley*.  Reddington has since withdrawn as an Opt-In in the *Bradley* Action, after filing the related *Reddington* Action.

[4] Varda and Harper were prepped for deposition to take place in March 2020 in Minneapolis, but the Parties did not actually hold these depositions in light of the mitigation measures imposed in response to the COVID-19 pandemic.

9

claims across the three Actions. *Id*. The Parties agreed on terms in a term sheet on June 26, 2020 and entered into the formal Settlement Agreement on August 16, 2020. **Goodley Decl. at ¶¶ 17-18**.

III.    **TERMS OF THE SETTLEMENT**

The Settlement Agreement provides for Defendant's payment of $4 Million in two installments (half at preliminary approval and half at final approval). **Ex. C ("Agreement") ¶ 10**. The Settlement Agreement becomes effective at thirty five (35) days from the date the Court enters a final approval order, with an additional twenty one (21) days for the Settlement Administrator to make class member distributions. **Agreement ¶ 11**. After deductions for attorney fees, litigation costs, settlement administration costs and incentive payments, the remaining approximately $2.5 Million (Net Settlement Amount) is divided amongst Opt-In Plaintiffs and the class members who do not opt-out of the Settlement. Funds will be apportioned based on weeks worked and a point-system, which is tied to whether the person was a Site Manager or a Contributor and whether the class member worked in California, New Jersey or elsewhere in the United States. **Agreement ¶¶ 5, 11**. Additionally, California aggrieved employees will receive a pro-rata share of $25,000, representing 25% of the $100,000 allocated to Plaintiff Spruill's PAGA claim. **Agreement ¶ 5.** Plaintiffs estimate that the average award for Site Managers in *Bradley* is approximately $4,940.88 and the median award is approximately $3,989.08; , the average award for each *Spruill* Site Manager will be approximately $9,451.49 (including pro-rata distributions to aggrieved employees for the PAGA allocation) with a median award of approximately $7,538.43; the average award for each *Spruill* (non-site manager) contributor will be approximately $2,980.07 (including pro-rata distributions to aggrieved employees for the PAGA allocation) with a median award of approximately $2,410.20; the

10

average award for each *Reddington* Site Manager will be approximately $7,360.79 with a median award of approximately $5,579.96; and the average award for each *Reddington* (non-site manager) contributor will be approximately $2,505.09 with a median award of approximately $2,165.50.  *See* **Goodley Decl. at ¶¶ 19-21; Borgen Decl. at ¶ 9.**

The opt-out settlement contains no claims process and no settlement money will revert to Defendants.  In fact, money from unclaimed checks will be split equally between *cy pres* beneficiaries Reporters Committee for Freedom of the Press and the Washington Lawyers' Committee For Civil Rights and Urban Affairs.  **Agreement ¶ 12**.  In addition, Defendants assume their portion of payroll taxes, in addition to the Maximum Settlement Amount. **Agreement ¶ 4**.

## IV     ARGUMENT

### A.     Legal Standard for Approval of Settlements Under Rule 23(e)

Rule 23(e) was amended in December 1, 2018 to specify the procedures to be followed in the preliminary approval of a class action settlement.  At a high-level, amended Rule 23(e) requires the Court to determine whether it can approve the settlement and certify a settlement class.

> **(e) Settlement, Voluntary Dismissal, or Compromise**. The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> >  (1) Notice to the Class.
> > > (A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> > > (B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that **the court will likely be able to**:
> > > > (i) approve the proposal under Rule 23(e)(2); and

11

(ii) <u>certify the class</u> for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1) (emphasis added).  Both elements are satisfied in this case because, as further discussed below: (1) the Court will likely be able to approve the terms in the proposed settlement under the criteria of Rule 23(e)(2); and (2) certification of the Settlement Class for purposes of settlement is appropriate in this matter.

### B.    This Case Warrants Preliminary Approval

#### 1.    *The Court Will Likely Be Able to Approve the Settlement Terms*

The Court must look to the criteria in Rule 23(e)(2) in order to determine whether it will *likely be able to approve* the terms of settlement:

(2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

#### a. *Plaintiffs and Class Counsel Have Adequately Represented the Class*

In the Committee Notes to the December 1, 2018 amendments to Rule 23, the Rules Committee provided further insight as to what courts should look to in evaluating whether a proposed settlement should be approved.  As to Rule 23(e)(2)(A),(B), the Committee stated:

> **Paragraphs (A) and (B).**  These paragraphs identify matters that might be described as **"procedural" concerns**, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement…

12

> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics.  <u>For example, the nature and amount of discovery in this or other cases</u>, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.  The pendency of other litigation about the same general subject on behalf of class members may also be pertinent.   <u>The conduct of the negotiations may be important as well.  For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations</u> may bear on whether they were conducted in a manner that would protect and further the class interests.  Particular attention might focus on <u>the treatment of any award of attorney's fees</u>, with respect to both the manner of negotiating the fee award and its terms.

12/1/2018 Committee Notes (emphasis added).

Here, the Parties engaged in significant discovery: (1) the exchange of approximately 70,000 documents; (2) a Rule 30(b)(6) corporate deposition and depositions of two additional corporate executives; (3) depositions of six League Managers; (4) depositions of four named plaintiffs and six Opt-In plaintiffs.  **Goodley Decl. at ¶¶ 3-9**.  The depositions allowed Class Counsel to better evaluate the strengths and weaknesses of the case.  Furthermore, with the assistance of mediator Linda Singer, the Parties negotiated a standard common-fund attorney fee award of 1/3, and separate reimbursement of counsel costs and settlement administration costs.  *See* Section III, *supra*.

### b. The Settlement Was Negotiated at Arms-Length

As previously stated, "the involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  Committee Notes.  Here, the involvement of an experienced mediator in hard-fought settlement negotiations, which included lengthy submissions by both parties to the mediator and discussions that spanned many hours, is a very strong indicator that the settlement was negotiated at arms-length.  Additionally, the fact that these cases were extensively litigated, further indicates the arms-length nature of the agreement.

13

### c. The Relief Provided in the Class Settlement is Adequate, Taking Into Account the Costs, Risks and Delay of Trial and Appeal

As to Rule 23(e)(2)(C),(D), the Committee stated:

**Paragraphs (C) and (D).** These paragraphs focus on what might be called a "substantive" review of the terms of the proposed settlement. The relief that the settlement is expected to provide to class members is a central concern. Measuring the proposed relief may require evaluation of any proposed claims process; directing that the parties report back to the court about actual claims experience may be important. The contents of any agreement identified under Rule 23(e)(3) may also bear on the adequacy of the proposed relief, particularly regarding the equitable treatment of all members of the class.

Another central concern will relate to the cost and risk involved in pursuing a litigated outcome. Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure.

If the class has not yet been certified for trial, the court may consider whether certification for litigation would be granted were the settlement not approved…

12/1/2018 Committee Notes (emphasis added).

Thus, in evaluating the substance of the settlement (*i.e.*, a compromised level of relief), the Court should consider the amount of recovery for the class members, as compared to the maximum recovery, taking into account: the costs, risks and delay of recovery, as well as likelihood that the Court would grant class certification in a litigated motion for class certification.

If this case were to be fully litigated, the Court would need to resolve several important issues, including but not limited to: the classification of class members (e.g., as independent contractors or employees), damage estimates given a lack of time records, the applicable statute of limitations (two or three years, depending on the Court's determination of willfulness), and whether class certification for purposes of trial is appropriate. Defense Counsel has stated its belief as to the merits of their defenses in this action. See Section I.C., *supra*.

14

### d. The Relief Provided in the Class Settlement is Adequate, Taking Into Account the Effectiveness of Distributing Relief to the Class

As to the method of distributing relief, the Committee stated:

…Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding…

12/1/2018 Committee Notes. In this case, it is clear that the method of distributing relief is fair and reasonable. There is <u>no claims process</u>. A Settlement Class member need only sign their check to receive their share of the settlement. **Agreement ¶ 11; Exs. 1, 2 ("Notices").** The Settlement Administrator will provide notice via U.S. mail to all those identified by Defense Counsel. **Agreement ¶ 7.** Defense Counsel will provide a last known address and proposed Class Counsel will check those addresses against the National Change of Address Database prior to mailing. **Agreement ¶ 7.** A class member who wishes to enjoy his or her share of the settlement need not do anything. A class member who does not wish to enjoy his or share of the settlement may complete and return an opt-out form. **Agreement ¶¶ 8, 9.** In no case will settlement funds will revert to Defendant. Finally, Defendant assumes its portion of payroll taxes for the taxable (non-penalty) portion of the settlement. **Agreement ¶ 4.**

### e. The Relief Provided in the Class Settlement is Adequate, Taking Into Account the Proposed Attorney's Fees

In addition to consideration of whether the proposed settlement is fair, reasonable and adequate under Rule 23(e)(2)(C)(iii), the Court will ultimately decide at final approval, under Rule 23(h), if Proposed Interim Class Counsel's attorney fees are reasonable.[5] In the D.C. Circuit, in a common fund recovery such as this one, the preferred method for compensating

---

[5] Plaintiffs' counsel will brief attorney fee and cost recovery in more detail at final approval.

787017.3

class counsel is the percentage of recovery method. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorneys fees award in common fund cases."). Attorney fee awards of approximately one-third is quite common in the D.C. Circuit, if not the norm.[6]  Under both the FLSA, California and New Jersey law, a prevailing plaintiff is entitled to attorney fees and costs, under the lodestar method. *See* 29 U.S.C. § 216(b); Cal. Lab. Code §§ 1194, 2699(g), 2802; Cal. Code Civ. Proc. § 1021.5; N.J. Stat. Ann. § 34:11-56a25.

Under either the percentage of recovery method or the lodestar method, Proposed Interim Class Counsel's attorney fees, 33% of the Gross Settlement Amount (or $ 1,333,333.33) are clearly reasonable. Furthermore, as to the lodestar cross-check, counsel's requested fee is considerably less than its current lodestar of over $2 Million. **Goodley Decl. at ¶ 23; Borgen Decl. at ¶ 12.**

### f. All Agreements Have Been Disclosed

Rule 23(e)(2)(C)(iv), (3) require that the party seeking settlement approval must file a statement identifying any agreements made in connection with the proposed settlement. Other than the Class Action Settlement Agreement, no other agreements between the Parties exist. **Goodley Decl. at ¶ 1.**

### g. The Proposal Treats Class Members Equitably Relative to Each Other

---

[6] *See, e.g., Little v. Wash. Metro. Area Transit Auth.*, 313 F.Supp.3d 27, 35 (D.D.C. 2018) ("Fee awards in common-fund cases may range from fifteen to forty-five percent.") (quoting *Wells v. Allstate Ins. Co.*, 557 F.Supp.2d 1, 6 (D.D.C. 2008)); *see also id.* at 39 (noting that as of 2010, nationally, the mean and median percentage of class counsel awards in labor and employment cases was 28% and 29%, respectively).

16

The Settlement Agreement treats all Class Members equitably with respect to each other. The "Net Settlement Amount" (Gross Settlement Amount minus attorney fees, counsel costs, settlement administration costs and incentive payments) is apportioned according to workweeks worked by class members during the Class Period. **Agreement at ¶ 5**. The net settlement funds are allocated to class members in the three actions according to a point system. Opt-In Plaintiffs in *Bradley* Action will be allocated 1.0 points per workweek per person, Site Managers in the *Spruill* Action will be allocated 1.5 points per workweek per person, Contributors in the *Spruill* Action will be allocated 0.8 points, Site Managers in the *Reddington* Action will be allocated 1.3 points per workweek per person, and Contributors in the *Reddington* Action will be allocated 0.6 points per workweek per person. The Net Settlement Amount will be allocated to each case in proportion to the total number of points under this formula. **Agreement at ¶ 5**. The point system is intended to serve as a relative estimate of damages that class members in these cases would receive if they prevailed to a judgment. In other words, the California minimum wage (and penalty-related damages) are higher than those available in New Jersey, which in turn are higher than the minimum wage and damages available under federal law. Similarly, the California and New Jersey classes involve contributors (who worked less hours than Site Managers), and who are assigned a multiplier less than 1.0.

Similarly, tax treatment is slightly different for class members across the three cases, due to differences in available remedies. Payments to Settlement Class members who worked outside of California or New Jersey (*i.e.,* members of the FLSA Settlement Class) will be taxed 50% as wages and 50% as liquidated damages/penalties, whereas payments to Settlement Class members who worked in California or New Jersey will be taxed 40% as wages and 60% as liquidated damages/penalties. **Agreement at ¶ 11**. This minor difference in treatment is due

differences in the non-back pay remedies available under California and New Jersey law, *see* Cal. Lab. Code §§ 218.6, 1194.2, 2699 *et seq.*; N.J. Stat. Ann. § 34:11-56a25, as compared to the FLSA.  The point system and minor differences in tax treatment is certainly an equitable and reasonable way to distinguish amongst the class members.

### h. The Service Awards Should be Approved

Courts in the District of D.C. "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation."  *Cohen v. Chilcott*, 522 F.Supp.2d 105, 124 (D.D.C. 2007) (quoting *In re Lorazapam & Clorazepate Antitrust Litig.*, No. MDL 1290, 2003 WL 22037741, at *10 ("*Lorazapam*") (D.D.C. June 16, 2003)); *see also Wells v. Allstate Ins. Co.*, 557 F.Supp.2d 1, 9 ("This Court determined that incentive awards to named plaintiffs are not uncommon in class action litigation, particular where a common fund has been created for the benefit of the entire class.") (alterations, internal quotations and citations omitted).

The Settlement Agreement includes Service Award payments of the following: $7,500 to Named Plaintiffs and $1,500 to Opt-In Plaintiffs who were deposed or prepared for deposition.[7] **Agreement at ¶ 16**.  These service awards are well within the norm for class action settlements. *See, e.g.*, *Wells*, 557 F.Supp.2d at 9 (holding that $10,000 was an appropriate incentive award on total settlement fund of $800,000); *Lorazapam*, 2003 WL 22037741, at *11 (approving $20,000 incentive awards to named plaintiffs); *Cohen*, 522 F.Supp.2d at 124 (granting requested incentive awards of $7,500 to named plaintiffs)..

---

[7] Named Plaintiff Maija Varda and Opt-In Plaintiff Charles Harper were prepared by Counsel for scheduled depositions in Minneapolis, but the depositions never took place due to the COVID-19 pandemic. **Goodley Decl. at ¶ 7.**

Given the modest level of payment and the significant level of commitment shown by Plaintiffs and Opt-In Plaintiffs towards reaching settlement, including: providing information to further case investigation, providing declarations, providing documents and interrogatory responses, and preparing for and sitting for depositions, **Goodley Decl. at ¶¶ 3-9,** the Service Awards should be approved.

        *2.      The Court Will Be Able to Certify the California and New Jersey Settlement Classes for Purposes of Settlement Only*

The standard for certification of a settlement class is similar   to the standard for class certification for trial under Rule 23, but the two inquiries are not identical.  *See In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 17–18 (D.D.C. 2015) ("Although settlement does not eliminate the requirements of Rule 23(a) and (b), it 'is relevant to a class certification.'" (internal citation omitted)); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302 (3d Cir. 2011) ("The correct outcome is even clearer for certification of a settlement class because the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation.")  Thus, a court analyzing whether certification should be granted for purposes of settlement will look to the Rule 23(a) prerequisites along with the appropriate Rule 23(b) prong with an eye towards whether certification is appropriate *in the settlement* context.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (explaining that the predominance inquiry must take into account the purpose for which the class is being certified, i.e. settlement).   Rule 23(a) provides that:

    **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
        (1) the class is so <u>numerous</u> that joinder of all members is impracticable;
        (2) there are questions of law or fact <u>common</u> to the class;
        (3) the claims or defenses of the representative parties are <u>typical</u> of the claims or defenses of the class; and

19

> (4) the representative parties will fairly and <u>adequately</u> protect the interests of the class.

Fed. R. Civ. P. 23(a). (Emphasis added).  These prongs are known as "numerosity," "commonality," "typicality," and "adequacy," and are addressed in sequence below.

Furthermore, wage and hour class actions, including this one, are typically certified under Rule 23(b)(3):

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> …
>
> (3) the court finds that the questions of law or fact common to class members <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (emphasis added).  The two overarching requirements to certify a class under Rule 23(b)(3) are thus known as "predominance" and "superiority" and are addressed in turn below.

### a. Numerosity

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Absent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'"  *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting *Richardson v. L'Oreal USA, Inc.*, 991 F.Supp.2d 181, 196 (D.D.C. 2013).

Documentation provided by Defendant indicated that there are 345 California Class Members and 118 New Jersey Class Members.  **Goodley Decl. at ¶ 15; Borgen Decl. at ¶ 5.** Thus, numerosity is clearly satisfied.

### b. Commonality

The commonality requirement is met where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  As a court in this District has observed:

> The touchstone of the commonality inquiry is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quotation marks omitted; emphasis in original).  Depending upon the circumstances, this may involve many common issues that together provide a resolution, **but "even a single common question will do."** *Id.* at 2556 (quotation marks and alterations omitted).

*Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (emphasis added) (quoting and citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

In *Reddington* and *Spruill*, there are a multitude of questions of law and fact common to all class members, and thus the commonality requirement is satisfied.  These include, for example:

- Whether members of the Rule 23 Settlement Classes were misclassified as independent contractors and should have been classified as employees;
- Whether members of the Rule 23 Settlement Classes were denied payments of the minimum wage;
- Whether members of the Rule 23 Settlement Classes were denied overtime compensation;
- Whether members of the California Settlement Class were provided with rest breaks and meal breaks;
- Whether members of the California Settlement Class were issued inaccurate wage statements;
- Whether members of the California Settlement Class were denied reimbursement of incurred expenses.

Since even one common question of law or fact satisfies the commonality requirement, it is clear that the proposed Rule 23 Settlement Classes satisfy commonality here.

787017.3

### c. Typicality

Typicality is met where, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   Courts in this District "have found the 'typicality requirement' satisfied when class representatives 'suffered injuries in the same general fashion as absent class members.'" *Trombley v. Nat'l City Bank*, 826 F.Supp.2d 179, 192 (D.D.C. 2011) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2011); *see also Hubbard v. Donahue*, 858 F.Supp.2d 116, 120 (D.D.C. 2013) ("The typicality requirement under 23(a)(3) is satisfied here because the claims of the Class Representatives are based on the same course of conduct giving rise to the claims of the Proposed Settlement Classes."). Typicality may be satisfied where the "claims of named plaintiffs and of class members are based on the same core set of facts and underlying theory." *In re LivingSocial Marketing and Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013) (citing *Trombley*, 826 F.sup.2d at 192-93).

Here, typicality is established because the California and New Jersey Named Plaintiffs' claims are generally the same as those of the proposed Rule 23 Settlement Classes, both in the legal theory and the factual circumstances underlying that theory.  These are the same bases for the claims of the Rule 23 Settlement Classes.  Second, Plaintiffs are not subject to an individualized defense, much less one that is a major focus on the litigation.  Finally, the interests and incentives of Plaintiff are aligned with that of the Settlement Class.

### d. Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Two criteria are generally recognized for determining the adequacy of class representation—(1) the interests of the named representative

22

must not be antagonistic to or compete with the interests of the unnamed class members; (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Trombley*, 826 F.sup.2d at 193 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997); *see also Coleman through Bunn*, 306 F.R.D. at 84 (same).

Here, proposed Interim Class Counsel, Goldstein, Borgen, Dardarian & Ho ("GBDH") and Jennings Sigmond, P.C. ("JS") each have the qualifications to represent the Rule 23 Settlement Classes.

Goldstein Borgen Dardarian & Ho ("GBDH") is a plaintiffs' complex and class action firm that was founded in 1972, in Oakland, California. **Borgen Decl. at ¶ 14.** GBDH has a national practice and has litigated class and collective action lawsuits over the last twenty-five years in many states. **Borgen Decl. at ¶¶ 14-16.** GBDH's attorneys have been appointed class counsel in numerous class actions and settlements. *Id.*

Jennings Sigmond has over forty years of experience litigating labor and employment cases. **Goodley Decl. at ¶ 26.** Jennings Sigmond also has experience and success in wage and hour cases, including class and collective actions. **Goodley Decl. at ¶¶ 31, 32.** Furthermore, Jennings Sigmond has shown its competency and commitment to the Settlement Class through its vigorous advocacy in this case, as discussed in Section II, *supra*.

Additionally, as discussed with respect to typicality, there is no conflict of interest between the California and New Jersey Plaintiffs and the proposed Rule 23 Settlement Classes they seek to represent – rather, their interests and incentives are aligned.

### *e. Predominance*

787017.3

Class certification for purposes of settlement is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  As described by a court in this District:

> To demonstrate that common issues predominate over individualized issues, a plaintiff need not "prove that each 'element of his claim is susceptible to classwide proof.'" *Amgen,* 568 U.S. at 469, 133 S.Ct. 1184. Rather, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231. "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo,* –—— U.S.——, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Id.* (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50, pp. 196–97 (5th ed. 2012) (internal quotation marks omitted)). The predominance inquiry turns on "whether the common, aggregation-enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues." *Id.* (emphasis added) internal quotation marks omitted; *accord In re Petrobras Sec.,* 862 F.3d 250, 268 (2d Cir. 2017) ("[P]redominance is a comparative standard."). Critically, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual classmembers.' " *Tyson Foods,* 136 S.Ct. at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, pp. 123–24 (3d ed. 2005)).

*Howard v. Liquidated Services, Inc.*, 322 F.R.D. 103, 136 (D.D.C. 2017).

For purposes of certification of a settlement class, as described in Section IV.B.2.b, *supra*, there are sufficient common questions of law and fact to satisfy the predominance inquiry. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (predominance inquiry must take into account the purpose for which the class is being certified);

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."); *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 17–18 (D.D.C. 2015) ("Although settlement does not eliminate the requirements of Rule 23(a) and (b), it 'is relevant to a class certification.' . . .  it obviates the need to ask 'whether the case, if tried, would present intractable management problems.'  Therefore, insofar as an apparent threat to predominance is only a matter of unmanageability at trial, that should not foreclose certification of a settlement-only class." (internal citations omitted)); *Grossman v. Am. Psychological Ass'n, Inc.*, No. CV 13-2034 (JDB), 2015 WL 13664174, at *2 (D.D.C. Feb. 12, 2015) (granting preliminary approval of settlement and noting that predominance was satisfied "in the context of the settlement of this Litigation").

### f. Superiority

The superiority requirement is intended to "ensure[ ] that resolution by class action will 'achieve economies of time, effort, and expense and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Vista Healthplan, Inc. v. Warner Holdings Co.,* 246 F.R.D. 349, 359–60 (D.D.C.2007) (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) (alteration in original).  The Supreme Court has directed that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S. at 617.  "Accordingly, it is relevant to the superiority inquiry that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the

class-action device.'" *In re LivingSocial Marketing and Sales Practice Litig.*, 298 F.R.D. 1, 8

(D.D.C. 2013) (internal quotations and citations omitted; alteration in original).

"The Rule directs the Court to consider, in analyzing the alternatives to class-action

treatment, the following factors: 'the class members' interests in individually controlling the

prosecution or defense of separate actions; the extent and nature of any litigation concerning the

controversy already begun by or against class members; the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and the likely difficulties in

managing a class action.'" *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 87

(D.D.C. 2015) (quoting Fed. R. Civ. P 23(b)(3)).

Here, the individual damages for each class member are relatively small and therefore

individuals would not have a strong incentive to individually control litigation of their claims.

Furthermore, it would be difficult to find counsel willing to litigate such small claims.  Given the

high degree of similarity of the class members' claims and evidence, and the small dollar

damages per class member, this is the quintessential scenario where class action treatment is

superior to individual adjudication.[8]  Finally, manageability concerns need not be analyzed when

certifying a class for *settlement* purposes.  *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926

F.3d 539, 556–57 (9th Cir. 2019) (en banc) ("[M]anageability is not a concern in certifying

a settlement class where, by definition, there will be no trial."); *Sullivan v. DB Investments, Inc.*,

---

[8] *See, e.g., Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742 , 744 (7th Cir. 2008) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible."); *Hubbard v. Donahue*, 958 F.Supp.2d 116, 12-21 (D.D.C. 2013) ("The superiority requirement under 23(b)(3) is also met here because the small individual stakes involved make the class action a superior mechanism to effect a nationwide change in USPS policies and "ensure[ ] that class members will receive equal treatment.") (quoting *Radosti v. Envision EMI L.L.C.*, 717 F.Supp.2d 37, 53 (D.D.C. 2010)).

667 F.3d 273, 302 (3d Cir. 2011) ("The correct outcome is even clearer for certification of

a settlement class because the concern for manageability that is a central tenet in the certification

of a litigation class is removed from the equation.").

### 3.     The Proposed Notice is Appropriate

Under Fed. R. Civ. P. 23(e)(1)(B), where the Court is satisfied that it would "likely be

able to" approve settlement and certify a settlement class, "[t]he court must direct notice in a

reasonable manner to all class members who would be bound by the proposal."  Under Fed. R.

Civ. P. 23(c)(2)(B) (where a Rule 23(b)(3) settlement class will be certified):

> the court must direct to class members the best notice that is practicable under the
> circumstances, including individual notice to all members who can be identified
> through reasonable effort. The notice may be by one or more of the following:
> United States mail, electronic means, or other appropriate means. The notice must
> clearly and concisely state in plain, easily understood language:
>> (i) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if
>> the member so desires;
>> (v) that the court will exclude from the class any member who requests
>> exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under Rule
>> 23(c)(3).

The Settlement Agreement meets all of the above criteria.  The Notice specifies the

nature of the action, the definition of the Settlement Class, and the class claims, issues and

defenses.  The Notice further provides that a class member may exclude themselves from the

litigation and may obtain their own attorney if they desire, as well as the process for requesting

exclusion.  Finally, the Notice informs class members that if they do nothing, they will receive

payment, be bound by the terms of the Settlement, and barred from suing Defendant as specified

in the Settlement Agreement.

### C.     Settlement for the FLSA Settlement Class Should Also Be Approved

The D.C. Circuit has not opined on whether judicial approval of an FLSA settlement is required after suit has been filed "or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement.'" *Eley v. Stadium Group, LLC*, 236 F.Supp.3d 59, 62 (D.D.C. 2017) (quoting *Sarceno v. Choi*, 78 F.Supp.3d 446, 449 (D.D.C. 2015)).  Regardless, courts in this District "often agree to review proposed FLSA settlements when the parties jointly seek judicial approval." *Eley*, 236 F.Supp.3d at 62 (citing *Carillo v. Dandan, Inc.*, 51 F.Supp.3d 124, 132 (D.D.C. 2014)).  "The Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Eley*, 236 F.Supp.3d at 62 (citing *Carillo*, 51 F.Supp.3d at 134).

When assessing an FLSA settlement, the court must first "ensure that the settlement resolves a 'bona fide dispute'—that is, that the settlement reasonably resolves issues that are actually disputed by the parties." *Stephens v. Farmers Restaurant Group.*, 329 F.R.D. 476, 486-87 (D.D.C. 2019).  Here, there can be no debate that a bona fide dispute exists as to whether Defendant's Site Managers were employees entitled to FLSA minimum wage for all hours worked, or whether they were properly classified by Defendant as independent contractors.

"Once a bone fide dispute has been established, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Sarceno*, 78 F.Supp.3d at 450 (internal quotations, citations, and alterations omitted).  This "more flexible [(than the Rule 23 standard)] approach" takes account of the "totality of the circumstances" to determine whether an FLSA settlement is fair and reasonable. *Stephen*s, 329 F.R.D. at 487; *see also Eley*, 236 at

28

F.Supp.3d at 63; *Sarceno*, 78 F.Supp.3d at 451.  The factors to be considered under this approach

are whether: (1) the proposed settlement is a product of overreaching by the employer; (2) the

settlement was the product of negotiation between represented parties following arm's length

bargaining; and (3) serious impediments to the collection of a judgment by the plaintiffs exists.

*Stephens*, 329 F.R.D. at 487 (citing *Carillo*, 51 F.Supp.3d at 132-33).

If a proposed settlement is able to satisfy the "more searching" Rule 23 standard, it will

also satisfy the FLSA "totality of the circumstances" standard.  *See Stephens*, 329 F.R.D. at 487

("In any event, because the Court must evaluate the agreement under the applicable Rule 23(e)

framework to the extent that it settles the Rule 23 class members' claims, and further because the

Court finds that that framework requires a somewhat more searching review than the totality-of-

the-circumstances framework, the Court will focus its analysis on the former approach."); *see

also Prince v. Aramark Corp.*, 257 F.Supp.3d 20, 24-26 (D.D.C. 2017) (applying Rule 23(e)

standard to FLSA collective action at final approval stage).

As explained thoroughly above as to the Rule 23 Settlement Classes (which include Site

Managers) the proposed settlement here satisfies the more exacting Rule 23 standard, and

therefore the settlement also satisfies the FLSA approval standard.  For this reason, the Court

should also approve the FLSA settlement.

The proposed FLSA settlement therefore also satisfies the "totality of the circumstances"

standard.  The settlement cannot be considered an "overreach" by the employer where the FLSA

legal test for analyzing the employee question, the "economic reality test," is arguably more

difficult for Plaintiffs to satisfy than the "ABC" tests used under both California and New Jersey

state wage and hour laws.  *See Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10-11

(D.C. Cir. 2001) (listing economic realty factors).  As to the specific amount each collective

29

member will ultimately receive, the point system is a fair and reasonable manner to distribute settlement funds to the extent that Defendant would likely vigorously challenge at trial both the specific amount of hours worked by each Site Manager, as well as the types of work tasks that were compensable.

There may also exist serious impediments to Plaintiffs collecting a judgment.  First, it is not guaranteed that, under the economic reality test, Plaintiffs would have prevailed on the issue of whether Defendant's Site Managers were employees, let alone whether such analysis would suitable for determination on a collective basis, i.e., whether the conditionally-certified collective would be decertified following further discovery.  Second, in light of the fact that COVID-19 has disrupted professional and collegiate sports, this could pose economic difficulties for companies, like Vox Media, whose business is partially dependent upon professional and college athletics. If Vox Media were to face economic difficulties as a result of this disruption to the sports world, it could make it more difficult for Plaintiffs to collect on any judgment in the future.

Finally, as explained above, the FLSA settlement was negotiated at arm's length with the use of an experienced mediator.

Looking to the "totality of the circumstances," it is clear that the Court should approve the FLSA settlement as it is both fair and reasonable.

### D.    Proposed Final Approval Schedule

Plaintiffs propose the following schedule to implement the remainder of the class action approval process:

      a.    Defendant shall mail all required notices to State and Federal officials as provided under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after the date of this Order;

787017.3

b.      no later than _____, 2020 (twenty-one (21) days after the

date of this Order) Defendants will provide to Class Counsel all contact information for

the three Settlement Classes;

c.      no later than _____, 2020 (forty-five (45) days after the

date of this Order) the Settlement Administrator will mail the Settlement Class Notices to

the Settlement Classes;

d.      the deadline for members of the Settlement Class to request exclusion

from the Settlement Class or to post an objection to the Settlement Agreement shall be no

later than _____, 2020 (forty-five (45) days after the date the Settlement

Class Notices are mailed to the Settlement Classes);

e.      Class Counsel shall file their Motion for Final Approval of Class Action

Settlement (including any requests for approval of attorneys' fees and costs) no later than

_____, 2020 (fifty-five (55) days after the date the Settlement Class

Notices are mailed to the Settlement Classes).


## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'

Omnibus Unopposed Motion for Approval of Class Action Settlement.


Dated:   August 17, 2020                          Respectfully Submitted,

                                                  by: /s/ James E. Goodley
                                                  James E. Goodley (Bar No. PA0069)
                                                  jgoodley@jslex.com
                                                  Marc L. Gelman (PA 78857)*
                                                  mgelman@jslex.com
                                                  Ryan P. McCarthy (PA 323125)*

787017.3

rmccarthy@jslex.com
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 351-0613

David Borgen (CA 099354)*
dborgen@gbdhlegal.com
Laura L. Ho (CA 173179)*
lho@gbdhlegal.com
Ginger Grimes (CA 307168)*
Ggrimes@gbdhlegal.com
Mengfei Sun (CA 328829)*
Msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN &
HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

*Admitted pro hac vice*

*Attorneys for Plaintiffs and the Classes*

32

787017.3